# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2008 APR 21 AM 9: 23

CLERK 
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

ANTHONY DEVON THOMPSON,       )
                              )
        Petitioner,           )
                              )
    v.                        )        CV 107-009
                              )
ROSE WILLIAMS,                )
                              )
        Respondent.           )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner filed the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's requests for an evidentiary hearing be **DENIED**, that Petitioner's "Request for Ruling/Relief" (doc. no. 21) be deemed **MOOT**, that the above-captioned petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

On September 1, 2004, Petitioner pled guilty in the Superior Court of Columbia County, Georgia, to one (1) count of armed robbery.[1] (Doc. no. 15, Ex. 2, pp. 84-89).

---

[1] On September 25, 2002, Petitioner was indicted in the Superior Court of Columbia County, Georgia, and charged with one (1) one count of armed robbery, one (1) count of possession of a firearm or knife during the commission of a crime, and one (1) count of possession of a firearm by a convicted felon. (Doc. no. 15, Ex. 2, pp. 80-83). After a three-day jury trial, the trial judge declared a mistrial on December 11, 2003 because the jury was unable to come a unanimous decision concerning Petitioner's guilt. (Id. at 402). Petitioner's

Petitioner was sentenced to ten (10) years of imprisonment. (Id. at 91). Petitioner did not seek direct review of his conviction or sentence in the Court of Appeals or Supreme Court of Georgia. (See id., Ex. 1, p. 1; doc. no. 6, p. 7).

Petitioner filed a state petition for a writ of habeas corpus in the Superior Court of Chatham County, Georgia.[2] (Doc. no. 15, Ex. 1). Petitioner argued that: (1) he received ineffective assistance of counsel because his trial counsel: (a) refused to interview witnesses, (b) refused to properly investigate the case, (c) suppressed, tampered, and contaminated evidence, (d) "intentionally kept transcript during dismissal hearing," (e) provided no case-law in support of Petitioner's pro se motion to dismiss, (f) refused to raise ineffective assistance of Petitioner's prior trial counsel,[3] (g) refused to dispute the trial court's denial of his right to a speedy trial, (h) had a conflict of interest, and (i) generally conspired against him; (2) his plea was not knowingly, intelligently, or voluntarily entered; (3) the state failed to disclose evidence favorable to his defense; (4) his conviction was obtained by the actions of a "grand or petit jury" that were unconstitutionally selected and impaneled; (5) he was

---

case was again set for trial on January 4, 2004 (doc. no. 9, p. 5), and on February 4, 2004, Petitioner filed a pro se motion to dismiss, which was denied by the trial court. (Doc. no. 15, Ex. 2, pp. 102-107). Petitioner appealed the trial court's dismissal of his motion to dismiss, which was denied by the Court of Appeals of Georgia. (Id. at 108-113). On August 27, 2004, Petitioner entered into a plea agreement, whereby he pled guilty to armed robbery, and the remaining counts of the indictment were dismissed. (See id. at 84).

[2]Petitioner's state petition for a writ of habeas corpus was subsequently transferred to the Superior Court of Charlton County, Georgia. (See doc. no. 15, Ex. 2).

[3]The Court notes that, in Petitioner's state criminal proceedings, he was appointed four (4) separate attorneys to represent him. (Doc. no. 15, Ex. 3, p. 2). Ultimately, Petitioner was represented at his jury trial and subsequent state trial court proceedings by Mr. Leon Larke. (Id. at 2-3).

denied the right to a speedy trial; and (6) he was denied due process because the state used false evidence and perjured testimony. (See id., Ex. 1, pp. 4-5). After an evidentiary hearing, the state habeas court determined that Petitioner's claims were without merit and denied the petition. (Id., Ex. 3). Thereafter, Petitioner filed an application for a certificate of probable cause to appeal, which was denied by the Supreme Court of Georgia. (Id. at Exs. 4(a), 4(b) & 4(d)).

In the above-captioned federal petition for a writ of habeas corpus, Petitioner asserts the following claims: (1) his trial counsel was ineffective for: (a) refusing to interview witnesses, (b) refusing to promptly investigate the case, (c) refusing to withdraw due to conflict of interest, (d) refusing to advocate the denial of his right to a speedy trial, (e) failing to provide trial transcripts or case-law prior to a hearing related to his *pro se* motion to dismiss; (f) failing to raise ineffective assistance of prior trial counsel; (g) providing incorrect advice concerning sentencing, failing to advise him that he was waiving his right to appeal his guilty plea, and failing to advise him that he could withdraw his guilty plea; (h) refusing to challenge the state's failure to disclose evidence favorable to his defense; and (i) refusing to file motions to dismiss, suppress, or challenge the jury or indictment ("Ground One");[4] (2) his plea was not knowingly, intelligently, or voluntarily entered ("Ground Two"); (3) his conviction was obtained by the actions of "grand jury or petit" that were unconstitutionally selected and impaneled ("Ground Three"); (4) the state failed to disclose evidence favorable to his defense ("Ground Four"); (5) his conviction was obtained by use of a coerced

---

[4]Petitioner also submits extensive briefing, wherein he alleges that he received ineffective assistance from his pre-trial counsel, Mr. William Davidson, Mr. Randolph Frails, and Mr. John Flythe. (Doc. no. 1, pp. 10-12; doc. no. 9).

confession ("Ground Five"); (6) he was denied the right to a speedy trial ("Ground Six"); (7) his due process rights were violated due to the concealment of material information ("Ground Seven"); (8) his conviction was obtained through the use of false evidence and perjured testimony ("Ground Eight"); (9) the state habeas court (a) distorted the facts in favor of the Respondent, (b) abused the fact-finder process, and (c) intimidated Petitioner with intent to deny him a full and fair hearing ("Ground Nine"); and (10) the state habeas court (a) made decisions that are contrary to or involve unreasonable applications of clearly established federal law and (b) made decisions based on an unreasonable determination of the facts in light of the evidence presented ("Ground Ten"). (Doc. no. 1, pp. 7-16). Respondent answered, denying that any of Petitioner's constitutional rights had been violated as alleged in the above-captioned petition. (Doc. no. 6). Furthermore, Respondent argues that Grounds One and Two are without merit, that Grounds Three through Eight were waived by the entry of Petitioner's guilty plea, and that Grounds Nine and Ten fail to state federal claims. (Doc. no. 7).

Before turning to the merits of the above-captioned petition, the Court will explain the applicable standard of review.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court addressed Section 2254(d) in Brown v. Payton, 544 U.S. 133 (2005). The Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. at 141 (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA sets a highly deferential standard of review for state court factual determinations. The AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. __, 127 S. Ct. 1933, 1939-40 (2007) (quoting 28 U.S.C. § 2254(e)(1)); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000). If the record provides any support for a state court's factual findings, this Court may not set aside those findings unless and until they are rebutted by clear and convincing evidence. Crawford, 311 F.3d at 1317.

## III. DISCUSSION

**A.    Grounds Nine and Ten Fail to State Claims for Federal Habeas Relief**

Petitioner argues in Grounds Nine and Ten that the state habeas court distorted the facts in favor of Respondent, abused the fact-finder process, intimidated him with the intent to deny him a full and fair hearing, made decisions that are contrary to or involve unreasonable applications of federal law, and made decisions based on an unreasonable determination of the facts. (Doc. no. 1, pp. 15-16; doc. no. 13, pp. 22-24). Respondent counters (doc. no. 7, pp. 15-16), and the Court agrees, that Grounds Nine and Ten fail to state claims for federal habeas relief. Assuming for the sake of argument that Petitioner's state

6

habeas proceedings did not comply with state law,[5] the Court need not address either of these grounds in detail; it suffices to say that a federal court may entertain a federal petition for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the United States Constitution, a treaty, or the laws of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991).[6] Indeed, as a general rule, alleged infirmities in state habeas proceedings do not state an independent claim for federal habeas corpus relief. See Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995), cert. denied, 518 U.S. 1022 (1996) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief . . . ."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) ("Because claim (1) goes to issues unrelated to the cause of [the] petitioner's detention, it does not state a basis for habeas relief."). Simply put, a federal habeas court is not a "'super' state supreme court" available to grant relief every time it believes a state-court has erred. Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (per curiam) (quoting Meyer v. Estelle, 621 F.2d 769, 771 (5th Cir. 1980)). Therefore, Grounds Nine and Ten, which challenge Petitioner's state habeas court

---

[5]The Court notes that, in support of Grounds Nine and Ten, Petitioner merely offers conclusory allegations concerning the denial of a "full and fair state habeas hearing" (doc. no. 13, pp. 22-24), and submits, inter alia, "As for the habeas court's bias, the entire habeas trial transcript should be reviewed." (Id. at 22-23).

[6]In Estelle, the petitioner was denied federal habeas corpus relief by the United States District Court for the Northern District of California. Estelle, 502 U.S. at 66. However, the Ninth Circuit Court of Appeals reversed the district court, concluding that the admission of certain evidence, in conjunction with a prejudicial instruction, rendered the petitioner's trial arbitrary and fundamentally unfair in violation of due process. Id. at 67. Reversing the Ninth Circuit Court of Appeals, the Supreme Court held, inter alia, "[N]one of the alleged errors rise to the level of a due process violation." Id. Similarly, none of Petitioner's allegations concerning his state habeas court proceedings rise to the level of a due process violation supporting the requested habeas corpus relief.

proceedings, are not cognizable in a federal habeas proceeding and cannot form the basis for the sought-after federal habeas corpus relief. Quince v. Crosby, 360 F.3d 1259 (11th Cir. 2004) ("Therefore, while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.").

**B.    Grounds One through Eight Either Lack Merit or were Waived by Petitioner**

Petitioner essentially argues in Ground Two that his guilty plea was not knowingly, intelligently, or voluntarily entered, and that he would not have pled guilty, but for the ineffective (and unethical) conduct of his trial counsel, which is articulated in Ground One. (Doc. no. 1, pp. 7-14). Thus, the crux of Petitioner's claims concern the alleged ineffective assistance of trial counsel. In this regard, the state habeas court correctly noted that ineffective assistance of counsel claims are evaluated under the two-prong test set forth in Strickland v. Washington, (1984). (Doc. no. 15, Ex. 6, p. 3). However, the facts of Strickland are dissimilar from those presented in this case. Because it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Rompilla v. Beard, 545 U.S. 374, 380 (2005); see also Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)).

Under the first prong of the <u>Strickland</u> standard, Petitioner must show that his counsel's performance was deficient in that it fell below an "objective standard of reasonableness" considering all the circumstances at the time of counsel's conduct. <u>See</u> <u>Strickland</u> 687-92. Nonetheless, the Court's scrutiny of counsel's performance must be "highly deferential," and the Court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689. In this regard, the Court must determine whether counsel's performance was within "the wide range of professionally competent assistance," so as "to make the adversarial testing process work in the particular case." <u>Id.</u> at 690.

Furthermore, there is a strong presumption that counsel provided "reasonable professional assistance." <u>Id.</u> at 689. For example, decisions concerning which witnesses to interview and call to testify, as well as which trial motions to make, are all matters of trial strategy which are entitled to a "heavy measure of deference." <u>Id.</u> at 691 "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable--is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1271 (11th Cir. 2001) (citation omitted). Indeed, as the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as counsel acted . . . ." <u>Waters v. Thomas,</u>

46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). Consequently, "[u]nder those rules and presumptions, 'cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Id. at 1511 (quoting Rogers v. Zant, 13 F.3d 384, 396 (11th Cir. 1994)).

However, the Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the second prong of the Strickland standard, the Court must determine whether the deficient performance actually prejudiced Petitioner's case. To satisfy the prejudice prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Strickland, 466 U.S. at 694-95. As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

In the context of a guilty plea, the Court must inquire as to whether counsel's performance affected the outcome of the plea process. See Hill v. Lockhart, 474 U.S. 52, 59

10

(1985). That is, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. In setting forth that standard, the Court emphasized the "fundamental interest in the finality of guilty pleas." Id. at 58. Therefore, to succeed in his federal habeas corpus challenge to his state court conviction via a guilty plea entered on the advice of counsel, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59. With these basic principles in mind, the Court now turns its attention to the substance of Petitioner's guilty plea and ineffective assistance of counsel claims.

In his state habeas proceedings, Petitioner argued that his plea was not knowingly, intelligently, or voluntarily entered. As adduced at the state habeas evidentiary hearing, the critical facts can be summed briefly. Petitioner was represented by Mr. Larke in the state criminal proceedings that resulted in a mistrial and in Petitioner's guilty plea proceedings. (Doc. no. 15, Ex. 2, pp. 49-60). At the state habeas court's evidentiary hearing, Mr. Larke testified that he has been a lawyer, and member of the State Bar of Georgia, for approximately twenty-five (25) years. (Id. at 49 & 61).

Once appointed to represent Petitioner, Mr. Larke "spoke with [Petitioner] numerous times, got whatever discovery there was and proceeded to develop a strategy for a jury trial." (Id. at 49). After Petitioner's criminal trial resulted in a hung jury, Mr. Larke "spoke to the prosecuting attorney on numerous occasions and also spoke to [Petitioner] in reference to trying to situate his case with regard to him getting the best result possible, considering the

circumstances."[7] (Id. at 50). In this regard, Mr. Larke indicated that he advised Petitioner concerning the benefit associated with pleading guilty to armed robbery, as opposed to risking a potential sentence of life without parole as a recidivist, if he were convicted after a second state court trial. (Id. at 51-52).

Next, Mr. Larke explained, "[A]t the trial, there was not any evidence that we could have introduced that would have made any - any strategical sense, other than what was introduced and is a part of the record." (Id. at 53). According to Mr. Larke, "There [was not] any physical evidence that we had. (Id.). Additionally, Mr. Larke stated that, despite his appointment as counsel, Petitioner filed several *pro se* motions. (Id. at 53-54 & 80). Mr. Larke maintained that, after the jury trial, Petitioner filed a frivolous motion to dismiss "basically just attack[ing] the other attorneys."[8] (Id. at 54 & 80). Also noteworthy, Mr. Larke testified that, while representing Petitioner, he served as a special assistant attorney general and that, in this capacity, he assisted the State of Georgia collect child support. (Id. at 54 & 60-62). Mr. Larke testified that, although he never presented Petitioner with a conflict of interest waiver, they discussed the matter prior to Petitioner entering his guilty

---

[7]At the state habeas court's evidentiary hearing, Mr. Larke testified, "[T]here was evidence that [Petitioner] - that was on a video, and [Petitioner] was behind the counter getting money out of the drawer on video." (Doc. no. 15, Ex. 2, p. 50). Mr. Larke also stated, "[Petitioner] was aware that he had been noticed as a recidivist and the state was going to certainly have him sentenced as a recidivist if he was convicted." (Id. at 51).

[8]In this regard, Mr. Larke testified that, prior to trial, he examined the indictment and that he did not believe it to be invalid. (Doc. no. 15, Ex. 2, p. 82). Mr. Larked indicated that, despite his belief concerning the validity of Petitioner's motion, "[he] tried to accommodate [Petitioner] by . . . allow[ing] him to tell the judge whatever he wanted to." (Id.).

plea. (Id. at 55, 60 & 62-63). Furthermore, Mr. Larke submitted that Petitioner indicated that he did not have a problem with Mr. Larke's service as a special assistant attorney general and Mr. Larke maintained that his position did not pose any conflict of interest. (Id. at 55 & 64).

Finally, Mr. Larke testified, "[W]e were preparing for a trial, but at the same time we were talking to the prosecutor about negotiating pleas and seeing what avenue would be the best." (Id. at 56). Mr. Larke explained that, after he received the plea offer, he "spoke with [Petitioner] in terms of what the minimum was on an armed robbery. [He] spoke with [Petitioner] of that fact that he was going to get credit for the time he'd [sic] already been in jail . . . ." (Id. at 58). Mr. Larke confirmed that Petitioner decided to plead guilty after the plea offer was presented to him, that he discussed Petitioner's constitutional rights with him prior to sentencing, and that the trial judge also explained Petitioner's constitutional rights to him during the plea hearing. (Id. at 58-59 & 65-66). Furthermore, Mr. Larke denied promising Petitioner that, if he plead guilty, he would be eligible for parole after serving ninety percent of his sentence. (Id. at 70-72). Mr. Larke submitted that, during the plea hearing, Petitioner never indicated that he did not want to plead guilty or that he wanted to go to trial and that Petitioner never contacted him concerning potentially withdrawing his plea. (Id. at 59). Simply put, Petitioner's trial counsel testified that Petitioner voluntarily, intelligently, and knowingly entered his guilty plea. (Id. at 60).

Denying habeas relief, the state habeas court accurately summarized the testimony adduced at the hearing and correctly determined that: (1) Petitioner was advised of his constitutional rights prior to entering his plea; (2) Petitioner stated that he was "entering the

13

plea freely and voluntarily and with an understanding of the repercussions to himself" at the

plea hearing; (3) Petitioner "accepted a guilty plea for ten years, with credit for almost two

already served, as opposed to a possible recidivist sentence of life without parole"; and (4)

Mr. Larke did not guarantee Petitioner any particular treatment by the Board of Pardons and

Paroles. (Id., Ex. 3, p. 8-9). Furthermore, the state habeas court concluded, under Boykin

v. Alabama, 395 U.S. 238 (1969),

> Petitioner's plea was not the result of any misinformation or
> misunderstanding by Petitioner about parole prospects, the result of a
> 'conspiracy," or unlawfully induced but was knowingly, freely, and
> voluntarily entered by Petitioner to avoid a life without parole sentence upon
> a conviction at retrial.
>
> The record as a whole shows that Petitioner knowingly, intelligently,
> and voluntarily entered the guilty plea after waiving his constitutional rights
> . . . and the plea was not coerced.[9]

(Doc. 15, Ex. 3, pp. 9-10). Applying Strickland and Hill, the state habeas court also

determined that Petitioner had not received ineffective assistance of trial counsel:

---

[9]On August 27, 2004, Petitioner signed a "Change of Plea" form, wherein Petitioner
waived all rights of appeal. (Doc. no. 15, Ex. 2, p. 127). Petitioner also signed an
"Acknowled[g]ment and Waiver of Rights" form, wherein Petitioner indicated, *inter alia*,
that: (1) he understood the charges against him; (2) he understood that he had the right to
plead not guilty and to a "speedy and public" trial; (3) he understood that, if he plead guilty,
he would be waiving his rights as explained to him by his lawyer and the trial court; (4) he
was not threatened, forced, pressured, or intimidated to plead guilty; (5) he understood that
the maximum sentence faced, if convicted, would be life imprisonment; (6) he understood
the plea agreement; (7) he fully discussed his case with his trial counsel; (8) he was satisfied
with his trial counsel's performance; and (8) he wanted to freely and voluntarily plead guilty
to armed robbery. (Id. at 128-132). Furthermore, at the sentencing hearing, the trial court
specifically afforded Petitioner an opportunity to address the court, whereupon Petitioner
indicated, *inter alia*, that "[he] always pled guilty [in the past] because [he] was guilty of the
crime. This time[,] [he was] just basically doing it because [he] need[s] a break." (Id. at
118). Ultimately, however, Petitioner confirmed the assertions contained in the
"Acknowled[g]ment and Waiver of Rights" form. (Id. at 108-113).

At the outset, the [c]ourt dispenses with the obviously frivolous ineffective assistance of counsel claims by Petitioner. There can certainly be no ineffective assistance of counsel in keeping a record of what is occurring during a hearing and is probably the habitual practice of most lawyers. Nor has Petitioner established that Mr. Larke was ineffective in declining to spend his time and resources arguing Petitioner's dismissal motion; making ineffective assistance of counsel claims against attorneys who did not ultimately represent Petitioner in the trial of his case, which resulted in a hung jury in Petitioner's favor; or pursuing speedy trial claims, either during the motions hearing or afterwards, which the trial court's order demonstrates were wholly without merit.

Petitioner presented no evidence in support of his ineffective assistance of counsel claims that Mr. Larke refused to interview witnesses, properly investigate the case, and suppressed evidence. Further, these claims are belied by the fact that Mr. Larke had already handled a jury trial on the charges on Petitioner's behalf, securing a mistrial on a jury hung 7-5 in Petitioner's favor. Petitioner has not established either prong of these ineffective assistance of counsel claims.

Turning to the conflict of interest assertion, at the time of Mr. Larke's representation of Petitioner, Mr. Larke also worked as a special assistant attorney general on child support enforcement cases in the county. Mr. Larke testified that Petitioner was aware of his work as a special assistant attorney general. In fact it was the Petitioner who brought the issue up prior to the guilty plea proceeding, they discussed it prior to the guilty plea, and Petitioner stated that he had no problem with Mr. Larke's position representing the state. While it would have been better to put the notice and waiver of any possible conflict from representing the state in child support matters on record, under the scheme provided in O.C.G.A. § 45-15-30,[10] the

---

[10]O.C.G.A. § 45-15-30 states in pertinent part,

Attorneys at law under independent contract to the Department of Law may engage in the private practice of law even though they may have been appointed or designated either specially or generally as assistant attorneys general or attorneys. Notwithstanding that any attorney at law under independent contract to the Department of Law has been appointed or designated either specially or generally as an assistant attorney general and thus is identified with the State of Georgia as its representative for cases arising within the scope of that appointment or designation, representation of a defendant in criminal proceedings by that assistant attorney general shall not constitute a conflict of interest if that assistant attorney general provides

failure to have done so does not provide a basis for habeas corpus relief. First, the statute merely states that an on the record waiver establishes the lack of a conflict but does not render the failure to establish waiver on the record a conflict of interest. Second, and more importantly, habeas corpus relief is available only to address substantial violations of constitutional rights and not violations of state statute. As Mr. Larke correctly noted, his child support enforcement work as a special assistant attorney general did not pose a constitutional conflict of interest in Petitioner's case. Petitioner has also not otherwise established a constitutional conflict of interest.

Petitioner has failed to establish either prong of his claims of ineffective assistance of counsel.

(Doc. no. 15, Ex. 3, pp. 5-7 (internal citations and footnote omitted)).

Despite Petitioner's contentions, the Court finds that the conclusions of the state habeas court are supported by the evidence in the record. Furthermore, the state habeas court appropriately applied the standards enunciated in <u>Boykin</u>, <u>Strickland</u>, and <u>Hill</u>. Simply put, the record indicates, *inter alia*, that Mr. Larke, a seasoned criminal attorney, conscientiously, professionally, and thoroughly pursued Petitioner's case; that Mr. Larke properly discussed his position as a special assistant attorney general, which did not pose a conflict of interest; and that Petitioner was adequately apprised of his constitutional rights and legal options prior to entering his guilty plea. Indeed, Petitioner indicated, both in writing and orally, that he

---

written disclosure of such appointment or designation to the defendant prior to accepting employment by that defendant or, when a court has appointed an assistant attorney general to represent an indigent criminal defendant, disclosures to the defendant and to the court, to be reflected in the record of that court, such appointment or designation as assistant attorney general.

O.C. G.A. § 45-15-30.

was satisfied with Mr. Larke's representation. (Id., Ex. 2, p. 106 & 131). In sum, there is no reason to suppose that Mr. Larke's performance was deficient or that any of Mr. Larke's decisions were unreasonable, much less that Petitioner would have insisted upon proceeding to a second criminal trial, but for some nefarious or deficient action taken by Mr. Larke.

Moreover, Petitioner has not shown that he suffered any prejudice by pleading guilty rather than going to trial. In other words, Petitioner has not shown that Mr. Larke's estimation of the State's evidence was wrong or that Petitioner would not have been convicted, if he had gone to trial. In fact, the record indicates that Petitioner's sentence exposure would have been much greater, if he had proceeded to trial, and that a plea was in Petitioner's best interest. As such, Petitioner has failed to demonstrate that he suffered any prejudice, and thus, his guilty plea and ineffective assistance of counsel claims lack merit.[11] See, e.g., Jones v. White, 992 F.2d 1548, 1557-58 (11th Cir. 1993).

---

[11]As previously noted, Petitioner has provided the Court with extensive briefing, wherein he asserts allegations concerning ineffective assistance of counsel claims against his pre-trial counsel. (Doc. no. 1, pp. 10-12; doc. no. 9). To the extent that Petitioner argues that, but for their failures and conduct, he would not have entered a guilty plea, this claim fails because it is conclusory. Furthermore, it is difficult to ascertain how Petitioner's pre-trial counsel could have provided ineffective assistance of counsel resulting in Petitioner's guilty plea, when Petitioner was represented by different counsel at the trial that resulted in a hung jury and at subsequent state trial court proceedings. Indeed, at the evidentiary hearing, the state habeas court explained that, because Petitioner plead guilty, "[It is] that lawyer's representation that will determine whether or not [Petitioner] had effective assistance." (Doc. no. 15, Ex. 2, p. 82). Regardless, the record provides no indication, save Petitioner's self-serving conclusory allegations, that Petitioner's pre-trial counsel's performance was deficient. Furthermore, nothing in the record suggests there is a reasonable probability that, but for the alleged errors of Petitioner's pre-trial counsel, Petitioner would have insisted on going to a second trial, after Mr. Larke represented him in the first trial that resulted in a mistrial. Therefore, Petitioner's complaints about his pre-trial counsel fall far short of demonstrating ineffective assistance of counsel.

Finally, Petitioner argues in Grounds Three through Eight that his conviction was obtained by the actions of "grand jury or petit" that were unconstitutionally selected and impaneled; that the state failed to disclose evidence favorable to his defense; that his conviction was obtained by use of a coerced confession; that he was denied the right to a speedy trial; that his due process rights were violated due to the concealment of material information; and that his conviction was obtained through the state's use of false evidence and perjured testimony. (Doc. no. 1, pp. 7, 14 & 15). However, because Petitioner is attempting to challenge a conviction entered pursuant to a guilty plea, the range of claims that he may press in a federal petition for a writ of habeas corpus is quite limited:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989).

As a general rule, a guilty plea forecloses arguments which do not go to the validity of the plea itself. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense . . . , he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); see also Martin v. Kemp, 760 F.2d 1244, 1246-47 (11th Cir. 1985) ("A defendant who knowingly and voluntarily enters a plea of guilty waives all nonjurisdictional challenges to his conviction."). "Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." Finch v. Vaughn, 67

18

F.3d 909, 914 (11th Cir. 1995) (internal quotation omitted). Of course, Petitioner's guilty plea does not waive claims concerning constitutional violations which occurred after the plea was entered.

Denying state habeas relief, the state habeas court considered and rejected many of the claims presented in Grounds Three through Eight. (Doc. no. 15, Ex. 3, pp. 10-11). Notably, the state habeas court concluded, under Broce and Tollett, "These claims are waived by the entry of Petitioner's guilty plea, as a guilty plea is a break in the chain of events, waiving all known and unknown defenses and any alleged constitutional violations occurring prior to its entry." (Id. at 11 (internal citations omitted)). Here, the Court points out that the state habeas court's reliance upon "[t]he record as a whole," which included Petitioner's guilty plea hearing transcript and Petitioner's Acknowled[g]ment and Waiver of Rights" form, was completely proper and indeed dispositive of Petitioner's remaining claims. "Solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Apparently, Petitioner would have the Court ignore his own sworn statements--such will not do. As Petitioner knowingly and voluntarily pled guilty in open court, he waived the remaining challenges to his conviction set forth in Grounds Three through Eight, and therefore, he is not entitled to federal habeas corpus relief based on these claims.

In sum, Petitioner fails to contradict, with clear and convincing evidence, the findings of the state habeas court, which are supported by the evidence in the record. Furthermore, Petitioner has failed to demonstrate that the state habeas court unreasonably applied Boykin, Strickland, Hill, Broce, or Tollett to the facts of this case. In this regard, the record suggests

19

that Petitioner knowingly, intelligently, and voluntarily entered his guilty plea after waiving his constitutional rights and that Petitioner received effective assistance of counsel. Simply put, Grounds One through Eight are contradicted by the evidence in the record, and thus, fall far short of demonstrating that Petitioner is entitled to federal habeas relief.[12]

## C.    No Entitlement to Evidentiary Hearing

Petitioner requests, in his supporting and reply briefs, "a federal evidentiary hearing to fully and fair[ly] develop the factual basis . . . ."[13] (Doc. no. 9, p. 21; doc. no. 13, p. 23). However, an evidentiary hearing is neither needed nor appropriate in this case. As the Court previously explained, according to Rule 8 of the Rules Governing Section 2254 Cases, "[i]f the petition is not dismissed at a previous stage in the proceeding, the judge after the answer and the transcript and record of state court proceedings are filed, shall, upon review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required." (Doc. no. 19, p. 2). Furthermore, the Court will not conduct a hearing where the petitioner's proffered evidence has no effect upon the resolution of his claims.[14]

---

[12] As the Court has addressed the claims presented in the above-captioned petition and recommended that federal habeas relief be denied, Petitioner's "Request for Ruling/Relief" should be deemed **MOOT**. (Doc. no. 21).

[13] The Court also notes that, on December 26, 2007, Petitioner filed a motion for an evidentiary hearing, which was denied by the Court. (Doc. nos. 18 & 19). Nevertheless, in an abundance of caution, the Court will address the requests contained in Petitioner's supporting and reply briefs.

[14] Here, Petitioner avers a hearing is needed to "prove that [he] was actually innocent" and to "show that [he was not] afforded a full and fair state habeas hearing." (Doc. no. 13, p. 23). As the Court previously explained, Petitioner's claims concerning his state habeas court proceedings are not cognizable in these proceedings. Furthermore, Petitioner's assertions related to his actual innocence reflect little more than a belated attempt to dispute the evidence used as a factual basis for his plea. However, Petitioner gave up his right to a

Breedlove v. Moore, 74 F. Supp. 2d 1226, 1233 (S. D. Fla. 1999) (explaining that a habeas petitioner must show that "the proffered evidence would affect the resolution of the claim" before he is entitled to a hearing) (citing Bolender v. Singletary, 16 F.3d 1547, 1555 n.9 (11th Cir. 1994)); see also Stephens v. Kemp, 846 F.2d 642, 650-51 (11th Cir. 1988) (same). Therefore, as the record evidence affirmatively demonstrates that Petitioner's grounds for relief either lack merit or fail to state a claim for federal habeas relief, Petitioner's request for an evidentiary hearing should be **DENIED**. (Doc. no. 13, p. 23).

## IV. CONCLUSION

In sum, all of Petitioner's asserted grounds for relief either fail to state a claim for federal habeas relief, lack merit, or were waived by Petitioner. Accordingly, the Court **REPORTS** and **RECOMMENDS** that Petitioner's requests for an evidentiary hearing be **DENIED**, that Petitioner's "Request for Ruling/Relief" (doc. no. 21) be deemed **MOOT**, that the above-captioned petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 21st day of April, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

trial and to challenge the State's evidence against him. In short, these issues do not go to whether Petitioner's plea was entered knowingly and voluntarily, or whether he received ineffective assistance of counsel, and thus, provide no basis for granting Petitioner an evidentiary hearing.